Clark v. University of Illinois.

---

### D. H. Clark v. University of Illinois.

1. CONTRACTS—*Rule of Construction.*—In a controversy as to the meaning of a contract the court will adopt the interpretation which the parties in their dealings together have seen fit to place upon it.

2. APPELLATE COURT PRACTICE—*Errors Raised for the First Time in the Appellate Court.*—A court of review will not reverse a judgment for an error that could have been corrected by the trial court and which is raised for the first time in the court of review.

Assumpsit, upon contract of employment. Error to the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

WOLFE & SAVAGE, attorneys for plaintiff in error.

J. L. RAY and T. J. SMITH, attorneys for defendant in error.

MR. JUSTICE HARKER delivered the opinion of the court.

This suit was brought by the plaintiff in error to recover for salary claimed to be due him as professor of military science and tactics in the University of Illinois for the school year of 1899–1900. A trial by jury resulted in a verdict and judgment in favor of the university.

There is but little dispute about the facts. The chief contention is over the interpretation of the contract of employment.

For many years prior to the late Spanish war, the position of professor of military science and tactics in the University of Illinois has been filled by an officer of the regular army, detailed from the active list and paid by the federal government. In 1898, the officer then in charge having been relieved by the war department and ordered to join his regiment, the plaintiff in error, an officer on the retired list, addressed a letter to President A. S. Draper, of the university, with a view to being retained for the place. The president replied that the university authorities preferred an officer on the active list, and again wrote that if they failed to procure a detail from the government before the following year, they would look for an officer on the retired list. Considerable correspondence between President Draper and the plaintiff followed, in which salary, tuition for the plaintiff's three children in the university, and other matters were discussed, resulting in a decision of the president to recommend to the trustees of the university, the appointment of the plaintiff at a salary of $52.50 per month and remission of tuition fees for his children. The recommendation was made and the trustees, on June 13, 1899, made the appointment, but, not wanting to establish a precedent for admitting into the university the children of an instructor free of tuition, added to the $52.50 the amount of tuition for three students per month, $12.50, and fixed the salary at $65 per month. It was understood at the time that the $12.50 per month would be returned as tuition fees. The amount of $52.50 was required to bring the salary which the plaintiff was at the time receiving as a

retired officer or army captain up to that of a captain on the active list. Early in July, the president and trustees opened a correspondence with the war department, requesting the plaintiff be restored to the pay of a captain on the active list and that he be detailed for service as military professor of the university. The correspondence was successful and the plaintiff was restored and detailed accordingly.

On September 15, 1899, plaintiff entered upon his service at the university and continued for the school year of ten months. Each month he received from the university the $12.50 which was intended to cover the tuition of his children, until the following May, when he declined it and claimed that he was entitled to $65 for each month of service. The university authorities denied the claim and insisted that as he had been restored to the pay of a captain on the active list and was filling a detail made by the government, the university owed him nothing on account of salary. This suit followed, with the result mentioned.

We see no merit in the plaintiff's suit. From the correspondence between him and President Draper he was given to understand that the military professor at the university had always been paid by the government, and that if he should be retained, it would be upon the same salary footing as of a captain on the active list. He was notified in September, within a few days after beginning service, that he had been restored to full pay, and was apprised of the fact that it had been accomplished at the instance of the university authorities. President Draper expressed to him, at the time, his gratification over the fact, as it would relieve the university from paying him a salary; to that view he expressed no dissent. When he applied for his first month's salary, Professor Shattuck, the business manager, told him that it was the understanding of the university authorities that there would be due him only $12.50 per month, allowed for tuition for his children, as the $52.50 would be paid by the government. To that he made no dissent, but claimed that as he was not restored to

full pay by the government until five or six days after he began service, he should, by the university, be paid for that time, amounting to $12.25. The justness of that view was conceded by Shattuck, who added the amount to the $12.50, making $24.75, which was paid to the plaintiff and a receipt given therefor. We are here furnished with the strongest evidence that the plaintiff himself, was, early in his term of service, pleased to place upon his contract the same interpretation as that contended for by the defendant. The law is well settled that in a controversy as to the meaning of a contract, the court will adopt the interpretation which the parties in their dealings together have seen fit to place upon it. Amer. & Eng. Ency. of Law, Vol. 3, p. 867 (1st Ed.); Lyles v. Lesher, 7 West Rep. 51; Jackson v. Conlin, 50 Ill. App. 542; Bishop on Cont., Sec. 412.

It is contended that all previous negotiations were merged in the order made by the trustees on June 13, 1899, which, it is insisted, constituted, with the acceptance of the plaintiff, the contract, and that therefore the court errone-ously admitted in evidence the correspondence between the plaintiff and President Draper. We think the correspond-ence was properly admitted, for the reason that a portion of it, with the order of appointment, constituted the con-tract, and all of it was competent, as tending to show the intention of the parties and the true meaning of the con-tract. As to the contention that the plaintiff was entitled to a judgment of $12.50, even upon the theory that the plaintiff's restoration to full pay relieved the university from paying him the $52.50 per month, because he only received $12.50 each month for the nine months of his service, we desire to say that it clearly appears from the evidence that the $12.50 was not intended as salary, but was to be paid in lieu of free tuition for the plaintiff's three children, and it was understood that it was to be paid back as tuition. Owing to the fact that two of his chil-dren were too young to enter the university, only one attended, and his tuition amounted to only a few cents over forty dollars. As a matter of fact, then, he has

received and retains about sixty dollars more than was due him, in accordance with the true understanding of the parties. It seems, too, that this point is raised for the first time in this court. Not by instruction to the jury, by motion for new trial, nor in any other way was this question raised in the Circuit Court. It comes too late, even if it had merit in it. It has been repeatedly held in this State that a court of review will not reverse a judgment for an error that could have been corrected by the trial court, and which is raised for the first time in the court of review.

The views above expressed render a discussion of the instructions unnecessary. Judgment affirmed.

Mr. Justice WRIGHT took no part.